Rene L. Valladares
Federal Public Defender
Nevada State Bar No. 11479
*Laura Barrera
Michigan State Bar No. P80957
*Martin L. Novillo
Virginia State Bar No. 76997
Assistant Federal Public Defenders
411 E. Bonneville Ave., Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
Laura_Barrera@fd.org
Martin_Novillo@fd.org

*Attorney for Petitioner Nicolas Esteban Cavieres Gomez

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Nicolas Esteban Cavieres Gomez,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>Christopher Chestnut, *et al.*,<br><br>　　　　Respondents. | Case No. 2:25-cv-00975-GMN-BNW<br><br>**Emergency Motion for Temporary Restraining Order or Preliminary Injunction**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

I. LEGAL AND FACTUAL BACKGROUND ....................................................... 3

II. LEGAL STANDARD .......................................................................................... 5

III. ARGUMENT ........................................................................................................ 6

    A. Cavieres Gomez is likely to succeed on the merits. ................................ 6

    B. Cavieres Gomez would suffer irreparable harm in the absence of a temporary restraining order. ................................................................. 8

    C. The Balance of the Equities and the Public Interest favor Cavieres Gomez. ................................................................................................... 12

    D. This Court should not impose a bond requirement. ............................. 16

IV. CONCLUSION .................................................................................................. 17

Plaintiff-Petitioner, Nicolas Esteban Cavieres Gomez is a citizen of Chile detained by U.S. Immigration and Customs Enforcement (ICE). Petitioner remains in ICE custody at the Nevada Southern Detention Center despite the fact that he is *not removeable* to Chile because an Immigration Judge (IJ) found, on February 7, 2025, that it is more likely than not that he would suffer persecution if deported to his home country and granted withholding of removal relief. As a result, Cavieres Gomez filed a petition for writ of habeas corpus challenging his continued detention. Cavieres Gomez now seeks a temporary restraining order or preliminary injunction to prevent his removal to a third country without due process during the pendency of these proceedings. Cavieres Gomez believes this is necessary because he has a final order of removal but cannot be removed to his country of origin, and so, he fits the profile of other detainees that ICE has removed or attempted to remove to third countries, including Libya and South Sudan, without due process.

The Petitioner moves, pursuant to Rule 7(b) and Rule 65 of the Federal Rules of Civil Procedure, for this Court to use its judicial power to preserve its jurisdiction over the pending habeas petition and ensure it can evaluate the Petitioner's claims and grant relief as law and justice require. Specifically, Petitioner moves the Court to enjoin Respondents from transferring him to a facility outside of this Court's jurisdiction and from removing him from the continental United States during the pendency of this proceeding.

As set forth below, Petitioner's ongoing detention by Respondents violates his due process rights under the United States Constitution.[1] In the absence of a temporary restraining order, Petitioner will suffer irreparable injury, and the

---

[1] Counsel was only recently appointed to this case and is still in the process of attempting to obtain relevant records and meeting with Cavieres Gomez. Accordingly, Cavieres Gomez may seek to amend his claims for relief upon obtaining relevant records.

1

1  balance of hardships and the public interest favor relief. Critically, if Petitioner is
2  removed to the custody of another country, this Court will lose jurisdiction
3  permanently.
4      In support of this Motion, Petitioner relies upon the accompanying
5  memorandum in support of a Temporary Restraining Order. A proposed order is
6  attached for the Court's convenience. Petitioner respectfully requests that this
7  Court grant this emergency application and issue a temporary restraining order.

### MEMORANDUM OF POINTS OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

## I.  LEGAL AND FACTUAL BACKGROUND

U.S. immigration law affords non-citizens in the United States three forms of protection from persecution and/or torture: asylum, withholding of removal under the INA, and protection under the Convention Against Torture (CAT). Asylum typically provides full protection against deportation to any country. *See* 8 U.S.C. § 1158(c)(2). Individuals who are not eligible for asylum because of criminal or timeliness issues may qualify for withholding of removal. *Id.* § 1231(b)(3)(A); *see also* 8 C.F.R. §§ 208.16, 1208.16. Withholding of removal is a "mandatory" protection that prohibits removal to a designated country where a non-citizen establishes that they are more likely than not to face persecution. *INS. v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999). Withholding of removal also contains exceptions for, *inter alia*, individuals who have committed certain serious crimes. *See* 8 U.S.C. § 1231(b)(3)(B).

An IJ who grants withholding of removal issues a removal order and simultaneously withholds or defers that order with respect to the country or countries for which the non-citizen demonstrated a sufficient risk of persecution. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 524 (2021). Once withholding relief is granted, either party has the right to appeal that decision to the Board of Immigration Appeals (BIA) within 30 days. *See* 8 C.F.R. § 1003.38(b). If both parties waive appeal or neither party appeals within the 30-day period, the removal order and associated relief become administratively final. *See id.* § 1241.1.

Petitioner is a native and citizen of Chile who, upon information and belief, resided in the State of Utah until his detention by immigration authorities in October of 2024. Petitioner was placed in removal proceedings and, on February 7, 2025, was granted withholding of removal pursuant to 8 USCS § 1231(b)(3)(A).

More specifically, the IJ found a clear probability that Petitioner's life or freedom would be threatened if deported to Chile. On the current record, it is unclear if Petitioner's removal order and accompanying relief grant became final on February 7, 2025, or March 7, 2025. If all parties waived appeal of the decision, the order would have become final on February 7. If ICE reserved appeal, it became final on March 7 when ICE failed to timely appeal. 8 C.F.R. § 1003.39.

Despite the above-noted relief, Respondents continue to hold Petitioner in custody. And, upon information and belief, Petitioner is in imminent risk of being removed from this Court's jurisdiction and to a third country, in violation of his right to due process under the United States Constitution. Petitioner's fears are based upon his continued detention despite having been awarded withholding of removal as well as the Government's recent string of arbitrary and indiscriminate removal or attempts at removal of individuals to countries where they have no prior ties and face dangerous conditions, including removal of noncitizens to a maximum-security prison in El Salvador and to war-torn countries, such as Libya and South Sudan.[2]

---

[2] *See e.g.* Cecilia Vega, *U.S. Sent 238 Migrants to Salvadoran Mega-Prison; Documents Indicate Most Have No Apparent Criminal Records*, CBS NEWS (April 6, 2025), https://www.cbsnews.com/news/what-records-show-about-migrants-sent-to-salvadoran-prison-60-minutes-transcript/; Maya Yang and Maanvi Singh, *Judge Rules White House Violated Order by Deporting Migrants to South Sudan*, THE GUARDIAN (May 21, 2025), https://www.theguardian.com/us-news/2025/may/21/trump-deportations-south-sudan (detailing the Trump Administration's attempt to deport ICE detainees similarly situated to Cavieres Gomez to South Sudan); Claire Rush, *Trump Administration Says It's Working to Return a Guatemalan Man Deported to Mexico*, AP NEWS (May 28, 2025), https://apnews.com/article/immigration-deportation-mexico-guatemala-trump-b286a916a5618dfa432bf31896de0cb0 (describing a case in which a Guatemalan man who had been granted withholding of removal from Guatemala was removed to Mexico without notice and due process, then was returned to Guatemala by Mexico); Ted Hesson, Phil Stewart, and Humeyra Pamuk, *Migrants Told of Libya Deportation Waited Hours on Tarmac, Attorney Says*, REUTERS (May 9, 2025), https://www.reuters.com/world/us/migrants-told-libya-deportation-waited-hours-

Petitioner seeks an injunction barring Respondents from transferring him to a facility outside of this Court's jurisdiction and from removing him from the continental United States during the pendency of this proceeding.

## II.    LEGAL STANDARD

The standard a moving party must meet to obtain injunctive relief in the form of a temporary restraining order or a preliminary injunction is the same: "the moving party must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). "The first factor—likelihood of success on the merits—is the most important factor.'" *Chamber of Commerce of the United States v. Bonta*, 62 F.4th 473, 481 (9th Cir. 2023) (quoting *California ex. Rel. Becerra v. Azar*, 950 F.3d 1067, 1083 (9th Cir. 2020) en banc)). When the government is the defendant, "the balance of the equities and public interest factors merge." *Id.* (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). Alternatively, under the Ninth Circuit's sliding scale approach, a plaintiff may show either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor. *Johnson*, 72 F.3d at 1430.

---

tarmac-attorney-says-2025-05-09/ (non-Libyan detainees similarly situated to Cavieres Gomez were placed on a flight to be removed to Libya before the flight was ultimately cancelled due to court intervention).

5

### III. ARGUMENT

#### A. Cavieres Gomez is likely to succeed on the merits.

Petitioner brings his habeas petition for violation of his due process rights under the Fifth Amendment.[3] His writ of habeas corpus challenges "the fact [and] duration" of his confinement by immigration authorities. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); s*ee also Codner v. Choate*, No. 20-cv-01050-PAB, 2020 U.S. Dist. LEXIS 92768, 2020 WL 2769938, at *4 (D. Colo. May 27, 2020) ("[H]abeas corpus, and thus § 2241, offers detainees release from custody when the very fact that they are detained, or detained for a certain length of time, is unlawful."). The first factor in the TRO analysis weighs in favor of Cavieres Gomez because he is likely to succeed on the merits of his claim.

Here, Petitioner's continued detention violates due process and 8 U.S.C. § 1231(a), as interpreted by the Supreme Court in *Zadvydas*, because his removal is not "reasonably foreseeable." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). He cannot be deported to his home country of Chile because he was granted withholding of removal relief with respect to that country. 8 C.F.R. § 1208.17. And Petitioner's deportation to a third country is likewise not reasonably foreseeable because it is believed that no attempt to arrange third country removal has been made, or at least, Petitioner has not been informed of any such efforts. Furthermore, the post-final order removal window of 90 days has expired. 8 U.S.C. § 1231(a)(1)(A).

ICE is not required to release the non-citizen once the removal period has expired, but "[d]ue process rights may be implicated where ... there is no significant likelihood of removal in the reasonably foreseeable future." *Cepeda v. I.N.S.*, 273 F.

---

[3] As noted above, undersigned counsel are still in the process of obtaining relevant records and information and may move to amend or add claims as more complete information becomes available.

Supp. 2d 222, 224 (E.D.N.Y. 2003) (citing *Zadvydas*, 533 U.S. at 701). In *Zadvydas*, the Supreme Court held that the INA limits a non-citizen's detention to "a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. Thus, the Court noted, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700. Moreover, the Court unequivocally held that, after an alien subject to removal has been detained for six months and has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

While Cavieres Gomez has not yet been detained for six months after his final order of removal, his circumstances plainly present the due process concern raised in *Zadvydas* because he is being detained but removal is not reasonably foreseeable. This case is distinguishable from *Zadvydas* with regards to the amount of time of detention that is reasonable because, in that case, the petitioners Ketstutis Zadvydas and Kim Ho MA were ordered removed on criminal grounds but could not be removed because the United States government could not obtain travel documents from any country of citizenship. Under those circumstances, it makes sense to allow ICE six months past the removal period to continue attempts to obtain travel documents and arrange repatriation. On the other hand, Cavieres Gomez cannot be removed to Chile, not as a result of reluctance by his country, but because an IJ found he would be persecuted if sent back to Chile. Accordingly, it is already clear that removal to Chile is not reasonably foreseeable. Furthermore, it does not appear that ICE has made any effort to properly (under the proper procedure and complying with due process requirements) seek to remove Cavieres Gomez to a third country, so that is also not reasonably foreseeable.

Should any attempt be made now to remove Petitioner to a third country, Respondents would be compelled to (1) comply with paragraphs (b)(1) and (b)(2) of 8 U.S.C. § 1231—which governs and explicitly and narrowly limits countries to which DHS is authorized to remove non-citizens with a final removal order—and (2) receive adequate advanced notice and an opportunity to assert a claim for withholding of removal and/or CAT protection. *See A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368 (2025) (recently holding that non-citizens "must receive notice" that "they are subject to removal" to a third country and that such notice must be provided "within a reasonable time and in such a manner as will allow the[] [non-citizen] to actually seek . . . relief.") (quoting *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025)).

As demonstrated above, Petitioner demonstrates his arbitrary and indeterminate continued detention violates his right to due process. Lastly, ICE's detention of Petitioner for over 90 days past his grant of relief without a prompt, individualized determination of whether he should remain detained is inconsistent with ICE's own long-standing policy, thereby violating the Administrative Procedure Act (APA). *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954). In short, Petitioner demonstrates a likelihood of success on the merits of his habeas petition.

**B.    Cavieres Gomez would suffer irreparable harm in the absence of a temporary restraining order.**

The second factor also weighs in Petitioner's favor. While removal "is not categorically irreparable," *Nken v. Holder*, 556 U.S. 418, 435 (2009), Cavieres Gomez would face irreparable harm if he was removed to a third country without due process.

First, Petitioner establishes that removal to a third country would potentially deprive this Court of jurisdiction while it assesses the merits of Petitioner's claim and preclude Petitioner from being able to participate in the adjudication of his

8

request for habeas relief, including participation in court proceedings and access to legal counsel for such purpose. Even more concerningly, absent a TRO, Petitioner faces irreparable harm because, if removed to a third country, he faces likely persecution. *See D.V.D. v. U.S. Dep't of Homeland Sec.,* No. 25-cv-10676-BEM, 2025 U.S. Dist. LEXIS 74197, 2025 WL 953074, at *4 (D. Mass. Mar. 29, 2025) (considering the same issue and finding "the threatened harm is clear and simple: persecution, torture, and death.").

In this case, removal by ICE to Cavieres Gomez's country of nationality, Chile, is not allowed because an IJ has already determined it is more likely that not that he will suffer persecution if returned there. Moreover, if ICE sent Cavieres Gomez to a third country, there is a substantial likelihood that he would end up returned to Chile and in imminent danger of persecution. For example, in another case, a detained Guatemalan migrant known as O.C.G. was granted withholding of removal by an IJ in February of 2025 because he would likely face persecution in Guatemala (This is the same relief Cavieres Gomez was granted, also in February).[4] A few days later, O.C.G. was sent to Mexico instead of being released from detention into the United States. Mexico then returned O.C.G. to Guatemala where he was forced to go into hiding.[5] O.C.G. was recently returned to the United States,[6] However, that does not mean Cavieres Gomez would not suffer irreparable harm if removed in the same manner as O.C.G. First, it is likely the government would argue that this Court could not force it to return Cavieres Gomez from a third country, as it recently has in other cases. Second, even if the government agreed to

---

[4] *D.V.D., et al. V. U.S. Dep't of Homeland Security, et al.,* No. 25-cv-10676-BEM (E.D. Mass.) at ECF No. 132.

[5] *Id.*

[6] *See* Didi Martinez and Phil Helsel*, Deported Guatemalan Man Back in U.S. After Judge Orders Trump Administration to Return Him*, NBC NEWS (June 4, 2025), https://www.nbcnews.com/news/us-news/deported-guatemalan-man-back-us-judge-orders-trump-administration-retu-rcna211065.

9

return Cavieres Gomez, if sent back to Chile by way of a third country, Cavieres Gomez might be hurt or killed, in line with the IJ's findings, before he could be returned.

Even if not ultimately returned to Chile, the prospect of removing Cavieres Gomez to a third country in itself presents a real threat of torture or prosecution. As noted above, the Government has recently removed non-citizens to maximum-security prisons in El Salvador and attempted to remove others to war-torn countries, such as Libya and South Sudan. In May, ICE loaded a group of non-Libyan migrants onto a plane bound for Libya in the middle of the night.[7] However, the flight never took off because attorneys for the detainees filed an emergency motion.[8] In 2023 it was determined by the Independent Fact-Finding Mission on Libya of the United Nations Human Rights Council that crimes against humanity were likely being committed against migrants in Libya.[9] The report also found "reasonable grounds to believe migrants were enslaved in official detention centers [as] well as 'secret prisons.'"[10] For its part, the Libyan government said it is not coordinating deportations with the United States and "it rejects using the country as a destination for deporting immigrants without its knowledge or consent."[11] It seems the United States government was going to do so anyway.

---

[7] *Supra* Hessel, et. al., note 2.
[8] *Id.*
[9] Press Release, United Nations Human Rights Council, *Libya: Urgent Action Needed to Remedy Deteriorating Human Rights Situation, UN Fact-Finding Mission Warns in Final Report* (Mar. 27, 2023), https://www.ohchr.org/en/press-releases/2023/03/libya-urgent-action-needed-remedy-deteriorating-human-rights-situation-un.
[10] *Id.*
[11] Kimmy Yam and Laura Strickler, *Why Asian and Mexican Immigrants, Moments Away from Being Deported to Libya, Never Left the U.S.*, NBC NEWS (May 8, 2025), https://www.nbcnews.com/news/us-news/asian-mexican-migrants-libya-sat-texas-military-plane-rcna205668.

After the deportation to Libya failed, ICE attempted to removed seven non-South Sudanese migrants to South Sudan.[12] South Sudan, of course, is on the verge of a civil war.[13] The United States Department of State has issued a Level Four travel advisory for the country—the highest possible level—advising that individuals should not travel to South Sudan due to crime, kidnapping, and armed conflict[14] (Libya also carries a Level Four travel advisory due to "crime, terrorism, unexploded landmines, civil unrest, kidnapping, and armed conflict.").[15] On March 8, 2025, the Department of State ordered non-emergency U.S. government employees to leave the country.[16] This flight to South Sudan departed the U.S. but landed at a U.S. naval base in Djibouti where the detainees and the ICE officers are under threat from nearby rocket attacks from Yemen and exposed to smoke from nearby burn pits.[17]

---

[12] *See supra* Yang et. al., note 2.
[13] *See* Yemesi Adegoke and Nichola Mandil, *Why Fears Are Growing of a Return of Civil War to South Sudan*, BBC NEWS (Apr. 11, 2025) https://www.bbc.com/news/articles/c7933p4xe7po.
[14] U.S. Dep't of State, *Bureau of Consular Affairs: South Sudan Travel Advisory*, https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/south-sudan-travel-advisory.html (Jun. 9, 2025).
[15] U.S. Dep't of State, *Bureau of Consular Affairs: Libya Travel Advisory*, https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/libya-travel-advisory.html (Jun. 9, 2025).
[16] *See supra* note 14.
[17] *See supra* Yang et. al., note 2.

In addition to South Sudan and Libya, the U.S. government has removed migrants to Uzbekistan,[18] Rwanda,[19] Panama,[20] and Costa Rica,[21] likely among others, as third countries.[22] Cavieres Gomez would likely face harm in each and every one of these countries, especially if sent without adequate notice and due process. Accordingly, this factor weighs strongly in favor of granting a temporary restraining order.

### C. The Balance of the Equities and the Public Interest favor Cavieres Gomez.[23]

Finally, upon consideration of the last two factors, the balance of the equities weighs in favor of granting the Petitioner's TRO, and a TRO would serve the public interest. To obtain preliminary injunctive relief, a petitioner must also show "the balance of equities tips in [its] favor." *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008). This involves weighing "the balance of relevant hardships as between the parties." *Vaqueria Tres Monjitas, Inc. v. Fabre Laboy,* 587 F.3d 464,

---

[18] *U.S. Deports 131 Central Asian Migrants to Uzbekistan*, REUTERS (Apr. 30, 2025), https://www.reuters.com/world/us-deports-131-central-asian-migrants-uzbekistan-fox-news-reports-2025-04-30/.

[19] *U.S. Deports Iraqi Man at Centre of Debate on Refugee Policy*, REUTERS (Apr. 24, 2025), https://www.reuters.com/world/us-deports-iraqi-man-centre-debate-refugee-policy-2025-04-24/.

[20] Manuel Rueda, *Asylum Seekers Deported by the U.S. are Stuck in Panama Unable to Return Home*, NPR (May 5, 2025), https://www.npr.org/2025/05/05/nx-s1-5369572/asylum-seekers-deported-by-the-u-s-are-stuck-in-panama-unable-to-return-home.

[21] The Associated Press, *Group of Mostly Asian Migrants Deported from U.S. Arrive in Costa Rica*, NBC NEWS (Feb. 21, 2025), https://www.nbcnews.com/news/asian-america/asian-migrants-deported-arrive-costa-rica-rcna193148.

[22] The migrants sent to Panama and Costa Rica were asylum-seekers without ties to those countries. It is unclear whether migrants in Cavieres Gomez's circumstances could also be sent there.

[23] The Supreme Court has instructed that the last two factors in the TRO analysis "merge when the Government is the party opposing the [TRO]"; the Court follows this instruction and reviews the balance of the equities and the public interest in tandem. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

12

482 (1st Cir. 2009). Furthermore, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Here, as discussed above, the hardship to Petitioner absent a TRO is unequivocal: Petitioner risks removal to an uncertain destination including several countries with documented human rights abuses and a likelihood of subsequent removal to Chile, where he would face persecution, on an uncertain timeline, through unspecified means in a manner that violates due process as well as various statutes and regulations. Further, in cases implicating removal, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009); *accord D.V.D. v. United States Dep't of Homeland Sec.*, Civil Action No. 25-10676-BEM, 2025 U.S. Dist. LEXIS 74197, at *54 (April 18, 2025) (same); *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012) ("It is always in the public interest to prevent the violation of a party's constitutional rights." (quotation marks and citations omitted)); *Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) (protecting the rights of people who face persecution abroad "goes to the very heart of the principles and moral precepts upon which this country and its Constitution were founded").

The hardship to the Government, if any, is minimal. Petitioner does not challenge Respondents' ability to prosecute criminal offenses, detain non-citizens, and remove non-citizens under immigration laws. While there is also "a public interest in prompt execution of removal orders," *Nken*, 556 U.S. at 436, the Supreme Court has held that "our system does not permit agencies to act

13

unlawfully even in pursuit of desirable ends." *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021); *see also NFIB v. Dep't of Labor*, 595 U.S. 109, 120–21 (2022) (staying an illegal vaccine mandate even though the Government said the mandate would save more than 6,500 lives); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952) (affirming district court's preliminary injunction of an illegal executive order even though a wartime president said his order was "necessary to avert a national catastrophe").

Further, "[t]he fact that [Plaintiff] has shown a likelihood of success on the merits strongly suggests that a TRO would serve the public interest." *New York v. Trump*, No. 25-cv-39, 2025 U.S. Dist. LEXIS 17593, at *17 (D.R.I. Jan. 31, 2025); *accord League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations") (internal quotation marks omitted). Thus, these final factors in the analysis lean in the Petitioner's favor.

In addition to this Court's general equitable powers, this Court could grant the requested relief under the All Writs Act ("AWA"), which provides federal courts with a powerful tool to "maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels." *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966); 28 U.S.C. § 1651(a); *California v. M&P Inv.*, 46 F. App'x 876, 878 (9th Cir. 2002) (finding Act should be broadly construed to "achieve all rational ends of law") (quoting *Adams v. United States*, 317 U.S. 269, 273 (1942)); *J.A.V. v. Trump*, No. 25-cv-072, 2025 WL 1064009, at *1 (S.D. Tex. Apr. 9, 2025) ("A federal court has the power under the All Writs Act to issue injunctive orders in a case even before the court's jurisdiction has been established."). If

14

Petitioner is illegally sent to a foreign country, the government will likely argue, as it already has in other cases, that this Court will no longer have jurisdiction.[24]

Whereas a traditional preliminary injunction requires a party to state a claim, an injunction based on the AWA requires only that a party identify a threat to the integrity of an ongoing or prospective proceeding, or of a past order or judgment. *See In Re: Nat'l Football League Players Concussion Injury Litigation*, 923 F.3d 96, 109 (3d Cir. 2019) ("[U]nder the All Writs Act, action is authorized to the extent it is 'necessary or appropriate' to enforce a Court's prior orders. . . Or, as this Court has explained it, there is authority under the Act to issue an injunction where such relief is 'necessary, or perhaps merely helpful.'") (citing 28 U.S.C. § 1651); *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) (court may enjoin "conduct which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion").

Courts have explicitly relied upon the AWA in order to prevent even a risk that a respondent's actions will diminish the court's capacity to adjudicate claims before it. *See Kurnaz v. Bush*, No. 04-cv-1135, 2005 WL 839542, *1–2 (D.D.C. Apr. 12, 2005) (enjoining Defense Department from transferring Guantánamo detainee with pending habeas petition, absent notice, outside the jurisdiction of the court); *Michael v. INS*, 48 F.3d 657, 664 (2d Cir. 1995) (using the AWA to stay an order of

---

[24] *See* Resp. to Order to Show Cause, *J.G.G.*, No. 25-cv-766-JEB (D.D.C. Mar. 25, 2025), ECF No. 58 at 12 (government asserting "once the flights were outside the United States, the President did not need to rely on that Proclamation or Act to justify transferring members of a designated foreign terrorist group to a foreign country"); Resp. to Plfs.' Mot. for Additional Relief, *Abrego Garcia v. Noem*, No. 25-cv-951-PX (D. Md. Apr. 13, 2025), ECF No. 65 at 3-4 (government arguing that "[t]he federal courts have no authority to direct the Executive Branch to engage with a foreign sovereign in a given manner," to facilitate return of wrongfully deported individual).

deportation "in order to safeguard the court's appellate jurisdiction" and preserve its ability to hear subsequent appeals by the petitioner).

### D. This Court should not impose a bond requirement.

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). "The purpose of such a bond is to ensure that the enjoined party may readily be compensated for the costs incurred as a result of the injunction should it later be determined that it was wrongfully enjoined." *Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 11 (1st Cir. 2018); *accord Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring) ("The bond, in effect, is the moving party's warranty that the law will uphold the issuance of the injunction").

The Ninth Circuit has previously indicated that, "[d]espite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citations and quotation marks omitted) (emphasis added). And, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id*. The burden of establishing the amount of bond necessary to secure against the wrongful issuance of an injunction rests with the party opposing the injunction. *See, e.g.*, *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (suggesting burden on defendant to support claim for bond).

This Court should waive the security requirement here because the requested TRO would merely maintain the status quo and there is no likelihood of harm to the Respondents.

16

IV. CONCLUSION

This Court should grant Petitioner's motion for a temporary restraining order.

Dated June 9, 2025.

                                              Respectfully submitted,

                                              Rene L. Valladares
                                              Federal Public Defender

                                              */s/ Laura Barrera*
                                              Laura Barrera

                                              */s/ Martin L. Novillo*
                                              Martin L. Novillo

                                              Assistant Federal Public Defenders

17

**Certificate of Service**

I hereby certify that on June 9, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, District of Nevada by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing by First-Class Mail, postage pre-paid, or have dispatched it to a third-party commercial carrier for delivery within three calendar days, to the following non-CM/ECF participants:

Sigal Chattah
United States Attorney for the District of Nevada
501 Las Vegas Blvd, Ste 1100
Las Vegas, NV 89101

Kristi Noem
Secretary of the U.S. Department of Homeland Security
Washington, DC 20528

Pam Bondi
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave, NW,
Washington, DC, 20530

U.S. Immigration and Customs Enforcement
501 S. Las Vegas Blvd., Ste. 200,
Las Vegas, NV 89101

Christopher Chestnut, Warden
Nevada Southern Detention Center
2190 E Mesquite Avenue
Pahrump, NV 89048

*s/ Kaitlyn O'Hearn*
An Employee of the
Federal Public Defender

18