SIGAL CHATTAH
United States Attorney
District of Nevada
Nevada Bar No. 8264
CHRISTIAN R. RUIZ
Assistant United States Attorney
501 Las Vegas Blvd. So., Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Fax: (702) 388-6787
Christian.Ruiz@usdoj.gov

*Attorneys for the Federal Respondents*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Nicolas Esteban Cavieres Gomez,<br><br>　　　　Petitioner,<br><br>　v.<br><br>Christopher Chestnut, *et al.*,<br><br>　　　　Respondents. | Case No. 2:25-cv-00975-GMN-BNW<br><br>**Response to Petitioner's Emergency Motion for Temporary Restraining Order or Preliminary Injunction (ECF No. 8)** |

### I. Introduction

Petitioner Nicolas Esteban Cavieres Gomez ("Petitioner" or "Gomez") is a Chilean national who is in ICE custody at the Nevada Southern Detention Center ("NSDC"). He is detained by the Department of Homeland Security ("DHS") pursuant to the Immigration and Naturalization Act.

Petitioner initiated this habeas action seeking his release (ECF No. 4, at 8) and subsequently filed an Emergency Motion for Temporary Restraining Order or Preliminary Injunction (ECF No. 8) seeking that the Court enjoin Respondents from transferring Petitioner to a facility outside of the Court's jurisdiction and from removing him from the continental United States during the pendency of this proceeding. Petitioner's Motion should be denied because Petitioner is the subject of an administratively final removal order. After a removal order becomes final, detention is mandatory for a period of time and

can be extended. Petitioner is well within the period of time that the Supreme Court has determined to be presumptively reasonable. Thus, Petitioner's detention is lawful. Further if Respondents were to attempt to remove Petitioner to a third country, his removal is subject to the due process requirements set forth in the preliminary injunction that the United States District Court for the District of Massachusetts issued in *D.V.D. v. U.S. Dep't of Homeland Sec.* Thus, Petitioner's fears of potential irreparable harm for being removed to a third country without due process are moot and speculative.

## II. Points and Authorities

**A.    Gomez's Detention is lawful and the Emergency Motion for a Temporary Restraining Order must be denied.**

The authority to detain noncitizens after the issuance of a final removal order is set forth in 8 U.S.C. § 1231(a). Under this provision, the DHS is afforded a ninety-day (90) period to accomplish a noncitizen's removal from the United States following the entry of a final order of removal. 8 U.S.C. § 1231(a)(1)(B). During the ninety-day removal period, detention of the alien ordered removed is mandatory. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."). The removal period begins on the latest of:

  (i) The date the order of removal becomes administratively final.

  (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

  (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Further, for certain noncitizens, such as Petitioner, who have been deemed inadmissible, the DHS may continue to detain an alien even after the expiration of the ninety-day removal period. 8 U.S.C. § 1231(a)(6). Specifically, when the Secretary of the DHS is unable to effect an alien's removal within the ninety-day removal period. 8 U.S.C. § 1231(a)(6).

The authority to detain aliens under section 1231 was addressed by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). There, the Court held that 8 U.S.C. § 1231(a) authorizes immigration detention after entry of an administratively final order of removal for a period reasonably necessary" to accomplish the noncitizen's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. The Supreme Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal. *Id.* at 701. To prevent "indefinite" detention, the *Zadvydas* Court held that *after* the six-month period has elapsed, a noncitizen may seek his release by demonstrating that his removal is not likely to occur in the reasonably foreseeable future. *Id.* at 699-70. This six-month presumption, however, does not mean that every noncitizen not removed must be released after six months. To the contrary, a noncitizen may be detained until it has been determined that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Importantly, the *Zadvydas* Court placed the burden of proof on the noncitizen seeking release to demonstrate, *after the six month period*, good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* Only if the noncitizen sufficiently supports such a finding, must the government "respond with evidence sufficient to rebut that showing." *Id.*

Following *Zadvydas*, DHS promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. *See* 8 C.F.R. § 241.13. Under these regulations, a detainee who has been in post-order custody for more than six months may submit a written request for release to DHS Headquarters' Post-Order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

In this case, an Immigration Judge ("IJ") issued on February 7, 2025, an order granting relief to Gomez in the form of withholding of removal under INA § 241(b)(3). (Exhibit A – Order of the Immigration Judge.) When an IJ grants withholding of removal, the IJ issues a removal order and withholds that order with respect to the country or countries designated in the removal order. *Johnson v. Guzman Chavez*, 594 U.S. 523, 524 (2021).

A removal order becomes final if both parties waive appeal or neither party appeals the removal order within 30 days. *See* 8 C.F.R. § 1003.38(b). In this case, DHS reserved its right to appeal. (Exhibit A – Order of the Immigration Judge.) Upon information and belief, DHS did not appeal the IJ's order, and the 30-day period to appeal expired on March 9, 2025. Gomez is thus subject to an administratively final removal order that became final on March 9, 2025.

Gomez is thus well within what the Supreme Court has deemed presumptively reasonable detention. In this case, the presumptively reasonable period, as set forth in *Zadvydas*, does not expire until September 9, 2025. Yet Gomez filed his Petition on June 2, 2025—or more than three months prior to the expiration of the presumptively reasonable period. As of the date of this Response, the presumptively reasonable period is not set to expire for almost two months.

Even if, assuming *arguendo*, Gomez's removal order had become final as of the day of the IJ's order, on February 7, 2025, the presumptively reasonable period would not be set to expire for almost two months from today. The prematurity of Petitioner's filings do not end with the commencement of this action; Petitioner's Emergency Motion for a Temporary Restraining Order has all the hallmarks of a motion that was rushed without sufficient evidence to support its positions. Petitioner has provided nothing, other than conclusory statements, to demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future, and thus Petitioner has not carried the burden of proof that is necessary to shift the burden onto the government to "respond with evidence sufficient to rebut" his showing.

In fact, Petitioner concedes that "Counsel was only recently appointed to this case and is still in the process of attempting to obtain relevant records and meeting with Cavieres Gomez." (ECF No. 8 at 1.) Despite the lack of factual support, Petitioner makes the assertion that it does not appear that ICE has made any effort to properly (under the proper procedure and complying with due process requirements) seek to remove Cavieres Gomez to a third country." (ECF No. 8, at 7.) Yet Petitioner's Motion is internally inconsistent. A page 2 of the same Motion, Petitioner takes the diametrically opposed position that "upon information and belief, Petitioner is in imminent risk of being removed from this Court's jurisdiction and *to a third country*, in violation of his right to due process under the United States Constitution." (*Id.* at 4). But Petitioner cannot have it both ways, either Respondents have made no effort to remove Gomez to a third country or Gomez is in imminent danger of being removed to a third country. The internal inconsistencies and lack of actual support for Petitioner's assertions are telling.

The arguments presented in the Motion are insufficient to show a likelihood of success on the merits and the Court should thus deny Petitioner's Motion.

///

///

///

5

**B.  Gomez is guaranteed sufficient due process and thus his fear of irreparable harm is unfounded.**

In *D.V.D. v. U.S. Dep't of Homeland Sec.*, Case No. cv 25-10676-BEM, the United States District Court for the District of Massachusetts issued, on May 21, 2025, a memorandum clarifying a preliminary injunction that guarantees Gomez would receive sufficient due process if Respondents were to attempt to remove him to a third country. (*See* Exhibit B – Memorandum on Preliminary Injunction). The memorandum thus renders moot Petitioner's fears that Gomez would suffer irreparable harm if he was removed to a third country without due process. (*See* ECF No. 8, at 8–12).

The United States District Court for the District of Massachusetts's preliminary injunction applies to Respondents and would apply to Gomez if Respondents were attempt to remove him to a third country. In its memorandum, the court said that its "Preliminary Injunction applies to the Defendants," which include the Department of Homeland Security, as well as their officers, agents, servants, employees, attorneys, any person acting in concert, and any person with notice of the preliminary injunction, the Secretary of the Department of Homeland Security, and the United States Attorney General. (Exhibit B, at 2.) Further, the preliminary injunction applies to "All individuals who have a final removal order . . . whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed." (Exhibit C, at 23.)

As the court explained in its memorandum clarifying the preliminary injunction, "*all removals to third countries* . . . must be preceded by written notice to both the non-citizen and the non-citizen's counsel in a language the non-citizen can understand." (*Id.*) Further, "the individual must be given a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for CAT protection prior to removal." (*Id.*) "If the non-citizen demonstrates 'reasonable fear' of removal to the third country, Defendants must move to reopen the non-citizen's immigration proceedings." (*Id.*) "If the non-citizen is not found to

6

have demonstrated a 'reasonable fear' of removal to the third country, Defendants must provide a meaningful opportunity, and a minimum of fifteen days, for the non-citizen to seek reopening of their immigration proceedings." (*Id.*)

Respondents will follow the law, including any applicable court orders and preliminary injunctions, if they were to attempt to remove Gomez to a third country. The preliminary injunction thus renders Gomez's fears that he would be removed to a third country without the due process too speculative to constitute a reasonable fear that he would suffer irreparable harm. It would be highly speculative to assume that Respondents would not follow the applicable laws if they were to remove Gomez to a third country, and Gomez has not provided sufficient evidence to support a contrary finding.

Principles of judicial economy support a denial of Petitioner's Motion because the United States District Court for the District of Massachusetts has issued a preliminary injunction that guarantees Gomez would receive sufficient due process. Further, if the Court were to issue its own temporary restraining order or a preliminary injunction in this case, the Court would create the potential for conflicts between the *D.V.D.* case and the case at bar.

### III. Conclusion

Based on the above, this Court should deny Petitioner's Emergency Motion for Temporary Restraining Order or Preliminary Injunction.

Respectfully submitted this 13th day of June 2025.

SIGAL CHATTAH
United States Attorney

 */s/  Christian R. Ruiz*
CHRISTIAN R. RUIZ
Assistant United States Attorney