UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

NICOLAS CAVIERES GOMEZ,

               Petitioner,

vs.

JOHN MATTOS, *et al.*,

               Respondents.

Case No.: 2:25-cv-00975-GMN-BNW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

     Pending before the Court is Petitioner Nicolas Esteban Cavieres Gomez's Amended Petition for Habeas Relief under 28 U.S.C. § 2241, (ECF No. 18). Respondents John Mattos, Michael Bernackle, Todd Lyons, Kristi Noem, and Pam Bondi filed a late Response, (ECF No. 28), which the Court accepts.[1] Petitioner replied, (ECF No. 30). Because Petitioner is being unlawfully detained, the Court GRANTS the § 2241 Petition.

**I.    LEGAL BACKGROUND**

    **A.  Removal Proceedings**

     When the Government wants to remove an individual, the normal path is through removal proceedings, requiring an evidentiary hearing before an Immigration Judge ("IJ"). 8 U.S.C. § 1229a. Removal proceedings determine not only whether an individual may be removed from the United States but also to where he may be removed. In the first instance, the noncitizen is entitled to select a country of removal. *Id.*; 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R.

---

[1] Accompanying Respondents' Response is a Motion to Extend Time to File Response, (ECF No. 29). Respondents request leave to file their Response to Petitioner's First Amended Petition one day late, pursuant to Federal Rule of Civil Procedure 6(b)(1)(B). For good cause appearing, the Court GRANTS the Motion to Extend and considers the Response because Respondents have shown that they failed to act because of excusable neglect.

§ 1240.10(f). If the noncitizen does not do so, the IJ will designate the country of removal and may also designate alternative countries. 8 C.F.R. § 1240.10(f).

Meanwhile, the noncitizen is also entitled to seek various protections, including asylum, statutory withholding of removal, and Convention Against Torture ("CAT") protections. 8 C.F.R. § 1240.11(c)(1). Some of these protections are discretionary. *See e.g.*, 8 U.S.C. § 1158; 8 C.F.R § 208.2. Others are mandatory, meaning that protection must be given if the conditions are met. Withholding of removal is a mandatory form of protection preventing deportation to the country or countries where an IJ finds that the individual is more than likely to be persecuted. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; *see also Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections]."). CAT protection is a mandatory protection against deportation to a country where the IJ finds that the individual is likely to be tortured. *Andrade v. Garland*, 94 F.4th 904, 914 (9th Cir. 2024).

### B. Reinstatement or Withholding-Only Proceedings

Alternatively, the U.S. Department of Homeland Security ("DHS") may reinstate a prior order of removal for a noncitizen it finds "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5). When DHS reinstates a removal order, the "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." *Id.* DHS may also issue administrative removal orders to individuals whom DHS determines are not lawful permanent residents and who have an aggravated felony conviction. *See* 8 U.S.C. § 1228(b); 8 C.F.R. § 238.1.

While noncitizens are barred from pursuing nearly all avenues of relief from removal in both processes, they may still seek protection through withholding of removal under 8 U.S.C. §

1231(b)(3) and CAT. 8 C.F.R. §§ 238.1(f)(3), 241.8(e).  If the noncitizen demonstrates a reasonable fear of persecution or torture, the noncitizen is placed in "withholding-only proceedings" before an IJ where they can only seek withholding of removal and/or CAT protection. 8 C.F.R. §§ 208.31(b), (e); *see also* 8 U.S.C. § 1231(a)(5) (providing that a noncitizen subject to reinstatement "is not eligible and may not apply for any relief under [the Immigration and Nationality Act ("INA")]"); 8 C.F.R. § 1208.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings. . .  shall be limited to a determination of whether the [noncitizen] is eligible for withholding or deferral of removal.").

 Withholding of removal and CAT protection only affect *where* the noncitizen may be removed, rather than *whether* the noncitizen may be removed; thus, even if a noncitizen prevails on his withholding or CAT claim, the removal order remains valid and enforceable, albeit not executable to the specific country as to which the noncitizen has demonstrated a likelihood of persecution or death. *See* 8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021); *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

**C. Third-Country Removals**

Because the removal proceedings happen on one track, while withholding and CAT proceedings happen on another track, a situation may arise where the Government has an order of removal but no country that an IJ has authorized for that removal.

In certain circumstances, where the Government may not remove a noncitizen to any country covered by that noncitizen's order of removal, the Government may still remove the noncitizen to any "country whose government will accept the [noncitizen] into that country." 8 U.S.C. § 1231(b)(2)(E)(vii).  These are called "third-country removals."  As relevant here, a

specific carve-out prohibits deportation to countries in which the noncitizen would face persecution or torture:

> Notwithstanding paragraphs [b](1) and [b](2), the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1231(b)(3)(A).  Similarly, under the Foreign Affairs Reform and Restructuring Act of 1998, which codified CAT protections, a noncitizen may not be removed to any country where they would be tortured. *See* 28 C.F.R. § 200.1; 8 C.F.R. §§ 208.16–18, 1208.16–18.  In other words, third-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings.

## II.   FACTUAL BACKGROUND

On March 30, 2025, Respondent Kristi Noem, the DHS Secretary, issued guidance, (the "Memo"), to Immigration and Customs Enforcement ("ICE") and other DHS agencies regarding third-country removals.  This Memo states that, prior to a noncitizen's removal to a third country, "DHS must determine whether that country has provided diplomatic assurances that [noncitizens] removed from the United States will not be persecuted or tortured." (Guidance Regarding Third Country Removals at 3, Ex. 6 to § 2241 Pet., ECF No. 19-7).  The Memo also says that, where a country has provided such assurances and the State Department believes them to be credible, a noncitizen may be removed to that country "without the need for further procedures." (*Id.*).

If the United States has not received those assurances or if the State Department does not believe them to be credible, the Memo instructs DHS to follow certain procedures. (*Id.* at 4).  In such cases, DHS will inform the noncitizen of removal to the intended country but will not affirmatively ask the noncitizen if they fear being removed to that country. (*Id.*).  DHS will refer any noncitizen that affirmatively states a fear of removal to a third country to United

States Citizenship and Immigration Services ("USCIS") for a screening for eligibility for withholding of removal and/or CAT protection as to the intended third country. USCIS will then determine whether the noncitizen has established that they will "more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal." (*Id.*). If USCIS determines that the noncitizen did not meet that burden, they will be removed. (*Id.*). If USCIS determines that the noncitizen has met this standard and the noncitizen was not previously in proceedings before the Immigration Court, USCIS will refer the matter to the Immigration Court in the first instance. (*Id.*). In cases where the noncitizen was previously in proceedings before the Immigration Court, USCIS will notify the referring immigration officer of its finding, and the immigration officer will inform ICE. (*Id.*). The ICE Office of the Principal Legal Advisor may file a motion to reopen with the Immigration Court or the Board of Immigration Appeals as appropriate for further proceedings for the sole purpose of determining eligibility for protection under INA § 241(b)(3) and CAT for the country of removal. (*Id.*). Alternatively, ICE may choose to designate another country for removal. (*Id.*).

On July 9, 2025, Respondent Todd Lyons, Acting ICE Director, sent additional guidance, (the "Directive"), to ICE employees regarding third-country removals. (*See* Directive to ICE Employees, Ex. 7 to § 2241 Pet.). The Directive was issued in light of the Supreme Court's decision to stay the injunction in the case *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass.), *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1323697 (D. Mass. May 7, 2025), and *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass. 2025). The Directive reiterated the procedures from the Memo. It added that, in cases where countries have not provided credible assurances or the State Department does not find an assurance to be credible, an ICE officer will serve the noncitizen with a Notice of Removal which includes the intended country of removal and that the notice

will be read in a language the noncitizen understands. (*Id.* at 2). The Directive explains that ICE "will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal" but that in "exigent circumstances" ICE may remove a noncitizen to a third country in as little as six hours after service of the Notice of Removal "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal." (*Id.*). Any removal under exigent circumstances must also be approved by DHS General Counsel or the Principal Legal Advisor if the DHS General Counsel is unavailable. (*Id.*).

On June 3, 2025, Petitioner filed a Petition for Habeas Relief under 28 U.S.C. § 2241. He later filed the operative Amended Petition. The remainder of the factual background before the Court is sparse. Petitioner, a citizen of Chile, was granted withholding of removal from Chile on February 7, 2025. (§ 2241 Pet. 2:2–3, ECF No. 18); (Immigration Judge ("IJ") Order at 1, Ex. 4 to § 2241 Pet., ECF No. 19-4). Counsel for ICE reserved appeal but did not file an appeal. (*Id.* 2:3–4). Accordingly, Petitioner's removal order and grant of withholding of removal became final on March 10, 2025, when the appeal period expired. (IJ Order at 1, Ex. 4 to § 2241 Pet.). Because of his withholding of removal status, Petitioner states he cannot be removed to Chile. (*Id.* 2:6–7). The statutory 90-day window to remove Petitioner to a third country commenced on March 9, 2025, and expired on June 8, 2025. (*Id.* 2:7–9). Petitioner remains detained at the Nevada Southern Detention Center in Pahrump, Nevada. (*Id.* 3:2–3). With his § 2241 petition, Petitioner challenges his continued detention and requests immediate release.

### III.   LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in

custody upon the legality of that custody, and. . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## IV. DISCUSSION

Petitioner alleges that his continued detention is unlawful based on four grounds. First, Petitioner alleges that his continued detention violates the Due Process Clause of the Fifth Amendment because his removal is not reasonably foreseeable. (§ 2241 Pet. 14:18–19). Second, he argues that his continued detention violates the Immigration and Nationality Act ("INA"), 8 U.S.C. §1231(a)(6). Third, he contends that his detention violates the Administrative Procedure Act ("APA"), 5 U.S.C. §706(2)(A). Lastly, Petitioner argues he is entitled to habeas relief because ICE's policy to remove noncitizens to a third country with no notice or opportunity to seek fear-based protection constitutes arbitrary and capricious agency action in violation of the APA and the Fifth Amendment. The Court begins by addressing Petitioner's arguments under the Fifth Amendment.

### A. Petitioner's Detention Violates the Fifth Amendment

Petitioner argues that his continued detention violates his due process rights under the Fifth Amendment because his removal is not "reasonably foreseeable" as contemplated in *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). He further contends in ground two that his detention violates § 1231(a) of the INA for the same reasons. Although Petitioner frames his *Zadvydas* claim as both a constitutional challenge under the Fifth Amendment and a statutory challenge under § 1231(a), whether his detention, at this point, "bear[s] [a] reasonable relation to the purpose for which [he is] committed" is a question of due process under the Fifth

Amendment. *See Zadvydas*, 533 U.S. at 690. Accordingly, the Court considers § 1231(a) only to the extent it bears on Petitioner's due process claim. Insofar as Petitioner brings a stand-alone challenge under the INA, the Court does not reach that challenge.

The Supreme Court has explained the provisions of § 1231(a) as follows:

> Once [a noncitizen] is ordered removed, DHS must physically remove him from the United States within a 90-day "removal period." 8 U. S. C. § 1231(a)(1)(A). The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement. § 1231(a)(1)(B). During the removal period, detention is mandatory. § 1231(a)(2).

*Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021). Under § 1231, the removal period may be extended beyond 90 days for a variety of reasons including a determination by DHS that "removal is not practicable or proper." *Id.* at 528–29.

Because "[a] statute permitting indefinite detention. . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 682. When a removable noncitizen is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id*. at 699. The Supreme Court adopted a six-month period of presumptive reasonableness after the removal order is final and confirmed that "[a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 710. The Court further determined that "after this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. "[A

noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Here, Petitioner's detention has surpassed the six-month period of presumptive reasonableness. Petitioner's removal order became final on March 9, 2025, the conclusion of the 30-day period to appeal it. (IJ Order at 1, Ex. 4 to § 2241 Pet.). Based on that date, the 90-day removal period under 8 U.S.C.A. § 1231 concluded on June 7, 2025. The six-month period of presumptive reasonableness under *Zadvydas* thus lapsed on September 9, 2025, six months after the removal order became final. Because the six-month period has passed, the Court must determine whether Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and if so, whether Respondents rebut that showing.

### 1. Petitioner's Initial Burden

Petitioner argues that his removal is not reasonably foreseeable under *Zadvydas*. He puts forth evidence to support an initial finding that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner was granted withholding of removal and cannot be removed to Chile, the only country which he is a citizen. (§ 2241 Pet. 2:2–3; 13:17–19). He alleges that "upon information and belief, throughout his prolonged detention, no preparations have been made to deport Petitioner, and no third country designation has been made." (*Id.* 15:26–16:1). The record before the Court reflects that, as of August 12, 2025, "DHS had not, at that time, initiated active steps to effectuate a third-country removal of Petitioner." (Status Report 1:26–27, ECF No. 26). The record further reflects that as of October 7, 2025, DHS has not identified a third country for Petitioner's removal and the local field office is awaiting direction from DHS. (Answer 2:10, ECF No. 28). In sum, Petitioner has identified a barrier preventing him from being repatriated to Chile, has demonstrated that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him.

In *Trejo v. Warden of ERO El Paso East Montana*, petitioner established that he was unable to be removed to his country of origin under CAT, was not a citizen of another country, and respondents did not identify a third country that would accept the petitioner. No. EP-25-CV-401-KC, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025). Based on those showings, the court found that the petitioner had met his initial burden under *Zadvydas*. *Id.* Though not binding, the Court is persuaded by the *Trejo* court's reasoning. Just as in *Trejo*, Petitioner has identified a particular individual barrier of his repatriation to his country of origin—his grant of withholding of removal to Chile. He has further demonstrated that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him. Petitioner is not required to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable," *Zadvydas*, 533 U.S. at 702, only that that he has "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *id.* at 701. Based on his withholding of removal from his only country of citizenship and the lack of a plan to deport him to a third country, Petitioner has done so. Accordingly, the Court finds that Petitioner has met his initial burden under *Zadvydas*.[2]

### 2. Respondents' Burden

The burden thus shifts to Respondents, *see Zadvydas*, 533 U.S. at 701, who state that removal is likely in the foreseeable future because "DHS has not *completely* abandoned efforts to effectuate Petitioner's removal," (Answer 3:3–4) (emphasis in original). But Respondents do not meaningfully respond to Petitioner's arguments. Rather, in their three-page Answer, Respondents submit that Petitioner's removal has not been abandoned but fail to supply the Court with any evidence of DHS's attempts thus far to remove Petitioner. Petitioner has been

---

[2] Respondents argue that the absence of immediate removal plans does not satisfy Petitioner's burden. (Answer 2:27–28) (citing *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008)). But *Prieto-Romero* concerned the question of detention during judicial review, where the removal period had not yet started. Because Petitioner is detained under § 1231(a) and the 90-day removal period plus additional time has passed, *Prieto-Romero* does not apply to Petitioner.

detained for almost eight months following a final order of removal, but Respondents submit no evidence that DHS has attempted to coordinate a third-country transfer, or even that they have begun the process in that time. In fact, Respondents admit that "DHS has not identified a third country for Petitioner's removal." (*Id.* 2:10). Courts in this circuit have regularly refused to find respondents' burden met where respondents have offered little more than generalizations regarding the likelihood that removal will occur. *See, e.g.*, *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025). In those cases, the government had at least identified a specific country for removal; here, there is no indication that any action has been taken to even identify a country for Petitioner to be removed to. Thus, Respondents' bare assertions that removal *could* possibly occur cannot satisfy their burden under *Zadvydas*. Accordingly, Respondents fail to rebut Petitioner's showing and Petitioner is entitled to habeas relief under the Fifth Amendment.[3]

### B. Petitioner is Entitled to Meaningful Notice and Opportunity to Present a Fear-Based Claim to an IJ

Petitioner contends that ICE's policy to remove noncitizens to a third country with no notice or opportunity to seek fear-based protection constitutes arbitrary and capricious agency action that violates the APA, 5 U.S.C. § 706. (§ 2241 Pet. 19:20–23). He also avers that he has a due process right to meaningful notice and opportunity to present a fear-based claim to an IJ before DHS deports him to a third country. (*Id.* 20:6–8). Respondents do not offer a meaningful response to the arguments in this ground, (*see generally* Answer), which constitutes a consent to the granting of this ground, *see* LR 7-2(d). Despite Respondents' failure to file

---

[3] Because the Court grants Petitioner relief under the Fifth Amendment (ground one), the Court need not analyze Petitioner's arguments under the INA (ground two) and the APA (ground three).

points and authorities regarding this ground, the Court addresses the merits of Petitioner's argument.

The Court finds that Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country. "Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Nguyen v. Scott, et al.*, No. 2:25-cv-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F.Supp.3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence."*Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999)). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 Fed. App'x. 724, 724 (9th Cir. 2016) (non-precedential memorandum disposition). Thus, in accordance with the ample case law above, the Court holds that Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an IJ before DHS deports him to a third country.[4]

---

[4] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether the stated policy violates the APA.

### C. Scope of Relief

First, Petitioner requests that he be released immediately. (§ 2241 Pet. 21:15). The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision. *Zadvydas* explains that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700. It further provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700. Moreover, when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Because the Court holds that Petitioner's continued detention violates the Fifth Amendment based on the analytical framework provided in *Zadvydas*, the Court finds that Petitioner's immediate release, subject to reasonable terms of supervision provided under 8 U.S.C. § 1231(a)(3), is warranted.[5] *See Zadvydas*, 533 U.S. at 699–700; *see also Trejo*, 2025 WL 2992187, at *11 (ordering in the alternative that Petitioner be released from custody subject to reasonable terms of supervision under *Zadvydas*).

Second, Petitioner requests that the Court prohibit Respondents from removing him to a third country without providing him and his counsel with adequate notice of intent to seek

---

[5] 8 U.S.C. § 1231(a)(3) provides:
> If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the [noncitizen]—
> (A) to appear before an immigration officer periodically for identification;
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
> (C) to give information under oath about the [noncitizen's] nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
> (D) to obey reasonable written restrictions on the [noncitizen's] conduct or activities that the Attorney General prescribes for the [noncitizen].

removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal. (§ 2241 Pet. 21:16–20).  For the reasons discussed above, the Court grants this requested relief.

## V.  CONCLUSION

**IT IS HEREBY ORDRED** that Respondents' Motion to Extend, (ECF No. 29), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner's Amended Petition for Habeas Relief under 28 U.S.C. § 2241, (ECF No. 18), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention immediately under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). Determining reasonable terms of supervision shall not in any way impede the immediate release of Petitioner.

**IT IS FURTHER ORDERED** that Respondents must file a notice on the docket no later than November 10, 2025, to certify compliance with the Court's order.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to a third country without providing Petitioner with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

The Clerk of Court is kindly directed to send a copy of this Order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada.

**DATED** this   6    day of November, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court